**ATLANTIS EXPRESS,
INC., Respondent,**

v.

**LL TRANSPORT SERVICES,
INC., Appellant.**

**No. C0–91–1449.**

Court of Appeals of Minnesota.

Feb. 11, 1992.

Review Denied April 13, 1992.

Thomas E. Wolff, Snelling, Christensen & Briant, P.A. Edina, for respondent.

Forrest M. Anderson, Cottage Grove, Robert J. Gallagher, Northhampton, Mass., for appellant.

Considered and decided by LANSING, P.J. and HUSPENI and SHORT, JJ.

## OPINION

LANSING, Judge.

In an action by an interstate motor carrier to recover undercharges from a motor carrier broker, we affirm the trial court's holding that the agreement did not create contract carriage, and the motor carrier broker was required to pay the tariff rate filed with the Interstate Commerce Commission (ICC).

## FACTS

Atlantis Express, an interstate motor carrier, entered into an agreement with LL Transport Services, a motor carrier broker, for transportation services. The parties negotiated rates on fourteen shipments over approximately nine months. After its liquidation, an audit of Atlantis's freight bills revealed that Atlantis did not charge and LL did not pay the applicable tariff rate filed by Atlantis with the ICC pursuant to 49 U.S.C. § 10761 (1988). Atlantis sued LL to recover $2,151.18 in undercharges. The parties brought cross motions for summary judgment to determine whether the shipments were made under Atlantis's common or contract carrier authority. The trial court concluded that the shipments moved under common carrier authority and entered judgment for Atlantis. LL appeals.

## ISSUE

Did the shipments move under Atlantis's contract or common carrier authority?

## ANALYSIS

■ The Interstate Commerce Act requires motor common carriers to file their transportation rates with the ICC. *See* 49 U.S.C. § 10761. LL concedes that it is required to pay the filed rate, and summary judgment is appropriate if the shipments moved under Atlantis's common carrier authority. *See Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, ——, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). If, on the other hand, the parties operated under contract carriage, the filed rate doctrine applies, the contractual rates are valid, and LL is entitled to summary judgment.

A motor contract carrier is

a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15)(B) (1988).

■ Reducing the transport agreement to writing does not in itself create contract carriage. *MCI Telecommunications Corp. v. E.L. Murphy Trucking Co.*, Fed. Carr.Cas. (CCH) ¶ 37,748, at 47,999 (I.C.C. June 22, 1989). The written, bilateral contract must impose specific obligations on both the carrier and the shipper for contract carriage to exist. 49 C.F.R. § 1053.1 (1990). The contract should include the equipment to be dedicated for the shipper's exclusive use; any distinct needs of the shipper; and essential terms such as destination of shipments, volume of freight involved, actual and definite rates or charges or a method by which the charges may be ascertained, and an agreement by the shipper to pay the specified charges. *Id.; Diversey Wyandotte Corp.*, Fed.Carr.Cas. (CCH) ¶ 37,821, at 47,197 (I.C.C. June 4, 1990) (pet. for declaratory order).

■ A "distinct need" is a need for more specialized services than a common carrier can provide. *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.*, 761 F.Supp. 194 (D.Mass.1991) (citing *Global Van Lines, Inc. v. Interstate Commerce Comm'n*, 804 F.2d 1293, 1301 (D.C.Cir. 1986)). "Services are 'more specialized' to the extent that they '[differ] in quality, priority, control by the shipper or in some other significant respect from the service a common carrier holds out to the general public.'" *Id.* (quoting *Dixie Midwest Express, Inc.*, 132 M.C.C. 794 (Feb. 3, 1982)).

Atlantis and LL's agreement provides: [LL] agrees to offer for shipment and [Atlantis] agrees to transport by motor vehicle, subject to the availability of equipment, a minimum of 100,000 pounds per year or a minimum of twelve (12) shipments for each year this agreement remains in effect.

The agreement does not specify the type of freight to be shipped, the destination of the shipments or the actual quantity of freight involved in each shipment. Rather than dedicating specific equipment for LL's exclusive needs, the agreement provides that

transportation of freight is contingent upon the availability of equipment. The conditional nature of Atlantis and LL's agreement distinguishes it from the agreement in *Global Transp. Servs., Inc. v. United Shipping Co.*, 134 B.R. 359 (Bankr.D.Minn. 1991), where the shipper met its client's distinct needs by obligating itself to carry every shipment tendered to it.

In *Bankruptcy Estate of United Shipping Co. v. Tucker Co.*, 474 N.W.2d 835 (Minn.App.1991), this court found contract carriage despite the absence of customary contract carriage terms because the shipper received services not available to the general public, including short-notice truck availability, irregular route service, appointment deliveries, driver loading, stop-offs in transit for partial unloading, and prioritizing of available loads. Similar services are not included in the arrangement between Atlantis and LL.

LL contends that the parties' agreement addresses its distinct needs because of specific provisions for cargo insurance, standard bills of lading, carrier liability, settlement of claims, and no-back solicitation. LL also claims that the agreed-on rate schedule meets its need to charge flexible rates. These provisions are standard terms that would likely be included in any transport contract. Furthermore, cargo insurance and bills of lading are indicia of common carriage. *See* 49 C.F.R. § 1043 (1990); 49 U.S.C. § 11707 (1988). The parties' agreement is best described as "a general agreement to do business." *See Gale v. Norwesco Inc.*, Civ. No. 4–90–156, slip op. at 7, 1990 WL 284504 (D.Minn.Dec. 11, 1990).

## DECISION

The judgment of the trial court is affirmed.

Affirmed.